**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| DAVID BENALI, on behalf of himself and all others similarly situated, | Civil Action No. 15-3605-BRM-DEA |
| Plaintiff, | |
| v. | |
| AFNI, INC. and JOHN DOES 1-25, | **OPINION** |
| Defendant. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are the following motions: (1) Plaintiff David Benali's ("Benali" or "Plaintiff") Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56 (ECF No. 23); (2) Plaintiff's Motion for Class Certification, pursuant to Fed. R. Civ. P. 23 (ECF No. 24); and (3) a Cross-Motion for Summary Judgment filed by Defendant AFNI, Inc. ("AFNI" or "Defendant") (ECF No. 37). All of the motions are opposed. The Court heard oral argument on December 6, 2016. (ECF No. 57.)

   **I.   BACKGROUND**[1]

Plaintiff commenced this putative class action on May 29, 2015 (ECF No. 1), alleging AFNI violated the Fair Debt Collection Practices Act, 15. U.S.C. §1692, *et seq.* ("FDCPA"). AFNI filed an Answer to Plaintiff's Complaint on August 10, 2015 (ECF No. 7), and the parties engaged in discovery.

---

[1] The facts set forth in this Opinion are taken from Plaintiff's Complaint, the parties' briefs and related filings.

The Complaint alleges that, "within the last year the Defendant began a collection campaign against the Plaintiff in an attempt to collect an alleged 'debt.'" (Compl. (ECF No. 1) at ¶ 15.) [2] "On or about January 14, 2015 the Defendant sent the Plaintiff a collection letter" (the "Collection Letter"). (*Id.* at ¶ 16, Ex. A; PSUMF at ¶ 1; DSUMF at ¶ 1.) The Collection Letter stated that $3,284.37 was owed by Plaintiff to AT&T Mobility. (PSUMF at ¶ 2; DSUMF at ¶ 2.)

The Collection Letter further stated, in pertinent part, as follows: "Payments made electronically to Afni may be subject to a $4.95 processing fee. Payment sent by mail are not subject to any processing fee." (Compl. at ¶ 19, Ex. A; PSUMF at ¶ 4; DSUMF at ¶ 4.) The crux of Plaintiff's Complaint is that "Defendant ha[d] no legal or contractual right to charge a processing fee." (Compl. at ¶ 20.) Nevertheless, "[a]ny payments made by a debtor by phone or online would incur this $4.95 processing fee." (PSUMF at ¶ 8; DSUMF at ¶ 8.) Defendant sent collection letters, substantially similar to the Collection Letter received by Plaintiff, to over 31,000 AT&T customers residing in New Jersey. (PSUMF at ¶ 11; DSUMF at ¶ 11.)

Despite multiple references to "Plaintiff's Wireless Customer Agreement with AT&T" (*see, e.g.*, PSUMF at ¶ 6) and repeated claims that "[t]he AT&T account was related to the Plaintiff's cellular phone" (*id.* at ¶ 3 (citations omitted)), the Complaint attempts to obfuscate the fact that the AT&T Mobility account referenced in the Collection Letter is not Plaintiff's. (*Compare* PSUMF and Compl. *with* Amended Declaration of David Benali in Support of the Plaintiff's Motion for Summary Judgment ("Benali Am. Decl.") (ECF No. 31) at ¶ 4.) Indeed, the parties agree that "Plaintiff never signed any agreement with . . . AT&T Mobility." (PSUMF at ¶

---

[2] It is undisputed the "Defendant is a 'debt collector' as that term is used and defined by the [FDCPA]." (Plaintiff's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("PSUMF") (ECF No. 23-3) at ¶ 9; Defendant's Response to Plaintiff's Statement of Undisputed Facts Pursuant to Local Rule 56.1 and Counter-Statement of Material Facts in Support of Its Cross-Motion for Summary Judgment ("DSUMF") (ECF No. 37) at ¶ 9.)

5; DSUMF at ¶ 5.) Thus, at his deposition, Plaintiff testified he never intended to pay the subject debt when he received the Collection Letter and, in fact, never paid any portion of either the subject debt or the referenced $4.95 processing fee. (DSUMF ¶¶ 13-16; *see also* Declaration of Concepcion A. Montoya in Response to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Cross-Motion for Summary Judgment ("Montoya Decl.") (ECF No. 34) at Ex. 1.) Specifically, Plaintiff testified, in pertinent part, as follows:

> Q: Did you have an account with AT&T Mobility?
>
> A: No, not me.
>
> Q: Not you?
>
> A: No.
>
> Q: Who would have?
>
> A: Somebody else, but not me.
>
> Q: When you say "Somebody else," who are you referring to?
>
> A: I mean a scam because I never ordered. I contacted AT&T and I never ordered anything.
>
> \*       \*       \*
>
> Q: So going back to this AT&T Mobility on this Exhibit 2, you said earlier that this was a scam.
>
> A: Yes.
>
> Q: Why do you say that?
>
> A: Because I never ordered a phone. I never opened a line. I never did anything on this.
>
> \*       \*       \*
>
> Q: When you read that this is a collection notice, what was your reaction?
>
> A: I think that AT&T is not serious and they're just trying to get money from anywhere they can. But it's not my account. So it doesn't matter to me. It was no matter to me.

3

        \*      \*      \*

> Q:    So you opened the letter, you saw it's a collection notice; correct?
>
> A:    Yes.
>
> Q:    You saw it wasn't your bill.
>
> A:    Yes.
>
> Q:    It wasn't your debt; correct?
>
> A:    Correct.

(Montoya Decl., Ex. 1 at 35:24-36:11, 43:8-15, 60:8-14, 65:21-66:3.)

Although the Complaint is silent on this point, Plaintiff initially maintained the AT&T Mobility account referenced in the Collection Letter "is related to my cellular phone, which I used for personal, not business uses." (Declaration of David Benali in Support of the Plaintiff's Motion for Summary Judgment (ECF No. 23-2) at ¶ 4.) Later, however, Plaintiff submitted an Amended Declaration "clarifying" his position. (*See* Benali Am. Decl. (ECF No. 31).) In this later declaration, Plaintiff swears as follows: "I own and use an AT&T cellular phone as part of a family plan, which is registered to my wife, Tali Benali's name. . . . The January 14, 2015 Collection Letter sought to collect on a different AT&T Mobility account. . . . [T]his account was not mine, and I do not owe the accounts sought therein." (*Id*. at ¶¶ 4-5 (emphasis in original).)

When questioned about these inconsistencies during oral argument, Plaintiff's counsel confirmed: "[W]e did discovery in this action. The defendant provided the wireless card member agreement underlying this AT&T Debt. . . . My client did not sign that agreement. . . . My client has consistently maintained in this action that he has never had an account with AT&T." (Tr. at 3:1-11.) Plaintiff's counsel continued:

> when we first moved for class certification we had a declaration in there saying that, you know, my account was never used for business purposes[,] it was only used for personal purposes and [] we clarified [so] there's no inconsistency

4

> here. . . . [H]is actual AT&T cell phone which he uses which is on his wife's plan that's the cell phone we were referring to and . . . just so the record is clear we put in a revised declaration . . . and in the revised declaration it has always been the same that [he] never used his phone for business purposes it has always been used for personal purposes and the reason is the FDCPA only covers personal debts not business debts and, so, we were just trying to establish one of the prongs of our prima facie claim.

(Tr. at 15:11-16:5.) Essentially, Plaintiff's position, as stated by his counsel, is that "[i]t doesn't matter whether or not [Plaintiff] actually owe[s] the debt" or ever had an account with AT&T. (*Id.* at 5:4-5.)

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the

5

burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### III. DECISION

Plaintiff's Complaint asserts two causes of action, both for alleged violations of the FDCPA. First, Plaintiff alleges AFNI violated § 1692e of the FDCPA by including in the Collection Letter a reference to a processing fee for payments made electronically, because it constitutes a false, deceptive and misleading representation or means to collect a debt. (*See* Compl. (ECF No. 1) at ¶¶ 22-26.) Second, Plaintiff alleges AFNI violated § 1692f(1) of the FDCPA because including a processing fee for payments made electronically constitutes an unfair and unconscionable means to attempt to collect a debt. (*Id*. at ¶¶ 27-31; Mem. of Law in Support of Plaintiff's Motion for Summary Judgment (ECF No. 23-1) at 7.)

Typically, "[t]o prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F. 3d 299, 303 (3d Cir. 2014); *see also Jensen v. Pressler & Pressler*, 791 F. 3d 413, 417 (3d Cir. 2015).

Plaintiff contends "[t]he first three of these elements are not the subject to any serious dispute in this action." (ECF No. 23-1 at 6.) Rather, "[t]he only question to be resolved in this action is whether the Defendant's actions, in attempting to charge a $4.95 processing fee to consumers paying their debts via credit card, violates the FDCPA." (*Id*. at 7.) Plaintiff urges the Court to answer this question in the affirmative and grant summary judgment in its favor because AFNI's charging of the processing fee was not "expressly permitted by the contract creating the debt." (*Id*. at 9.) It is undisputed, however, that Plaintiff never signed *any* agreement with AT&T, and Plaintiff concedes that "New Jersey state law neither affirmatively permits nor expressly prohibits a processing fee for credit card payments." (*Id*.)

Relying on the recent Supreme Court decision in *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540 (2016), Defendant argues Plaintiff has neither been harmed nor suffered an injury in fact and, thus, lacks Article III standing to maintain this action. (ECF No. 35 at 3.) Even assuming Plaintiff has standing, Defendant argues its reference to a processing fee in the Collection Letter is not a violation of the FDCPA because Plaintiff could have paid by mail without incurring a processing fee and, further, New Jersey law permits charging consumers processing fees so long as the consumers have another option to pay without incurring a fee. Finally, Defendant points out that "Plaintiff testified at his deposition that he never had an account with AT&T Mobility that is referenced in AFNI's January 14, 2015 letter; that the AT&T Mobility account was a 'scam,' and he contacted AT&T to say that he never ordered a phone and never opened a line. . . ."[3] (ECF No. 56 at 2.) Therefore, Defendant argues, Plaintiff has failed to meet his burden of showing the absence of a genuine issue of material fact and, further, lacks Article III standing for failing to demonstrate any concrete, particularized injury.

### A.   Article III Standing

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo*, 136 S. Ct. at 1547. "The standing inquiry focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (citing *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

---

[3] Defendant also notes "the shape-shifting nature of Plaintiff's evolving evidence on whether there is a contract or not . . . creating a fact issue that defeats Plaintiff's own summary judgment [motion]." (ECF No. 35 at 7 n.3.) Nevertheless, "AFNI's position is that regardless of the existence of a contract, there is no prohibition to collecting [processing] fees in the presence of a non-fee manner to pay, and that these processing or convenience fees are permitted by law." (*Id.*)

Article III "standing consists of three elements." *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*

Plaintiff, as the party invoking federal jurisdiction, "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny County Court of Common Pleas,* 75 F. 3d 834, 838 (3d Cir. 1996) (quoting *Lujan,* 504 U.S. at 561); *see also Spokeo*, 136 S. Ct. at 1547 ("The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements.") (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). However, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan,* 504 U.S. at 561.

As in *Spokeo*, "[t]his case primarily concerns injury in fact, the '[f]irst and foremost' of standing's three elements." *Spokeo*, 136 S. Ct. at 1547 (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id*. (citations omitted). "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'" *Id*. "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id*. (explaining that "[w]hen we have used the adjective 'concrete,'

9

we have meant to convey the usual meaning of the term – 'real,' and not 'abstract.'"). "Concreteness, therefore, is quite different from particularization." *Id*.

Defendant argues that Plaintiff "has not suffered any concrete injury – tangible or intangible – sufficient to sustain his alleged claim under the FDCPA" and "[t]he mere conclusion that he was upset [by the Collection Letter] is nowhere near the threshold requirement for a concrete, particularized injury." (ECF No. 35 at 4-5.) In response, Plaintiff argues that he "suffered an injury that is 'particularized', since he alleges that he personally received th[e] Collection Letter. Plaintiff further alleges a harm that is 'concrete' where the Defendant sought to obtain payment of an extra $4.95 fee from the Plaintiff." (ECF No. 47 at 13; *see also* Tr. at 7:23-25 ("In this case Mr. Benali is complaining about excessive collection practice on a letter that he received.").) According to Plaintiff, for purposes of Article III standing, "[i]t doesn't matter whether or not you actually owe the debt." (Tr. at 5:4-5.)

In *Spokeo*, the Supreme Court held that intangible injuries can be concrete and, under certain circumstances, the risk of real harm can also satisfy the requirement of concreteness. *Spokeo*, 136 S. Ct. at 1549. However, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id*. As such, a plaintiff may "not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id*. (citing *Summers*, 555 U.S. at 496 ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation … is insufficient to create Article III standing")) (additional citation omitted). This is exactly the situation here.

In his Complaint, Plaintiff sets forth bare statutory violations but has not established (and simply cannot establish) a single concrete harm he suffered as a result of these alleged violations. Merely receiving the Collection Letter, without more, is not sufficient to confer Article III standing

10

because, as Plaintiff unequivocally testified, the alleged "debt" was not his, and he knew it immediately upon receiving the Collection Letter. Even assuming, for the sake of argument, the Collection Letter violated the FDCPA, Plaintiff has only alleged a bare procedural violation divorced of any concrete harm. *See Spokeo*, 136 S. Ct. at 1550 ("Robins cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm. . . . An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more could work any concrete harm."). Here, Defendant's alleged FDCPA violations did not, in fact, result in any actual or threatened harm to Plaintiff, and he readily admits as much.

Plaintiff tries to distinguish *Spokeo* by arguing that, here, Defendant "created the risk that the Plaintiff would pay his debt with his credit card, and blindly pay this $4.95 fee, believing that this fee could legally be charged to him" and "suffered an injury that is 'particularized', since he personally received th[e] Collection Letter." (ECF No. 47 at 13.) But this is just another way of saying that a bare procedural violation is itself a concrete harm – a principle explicitly rejected by the Supreme Court. *See Spokeo* 136 S. Ct. at 1550; *see also Hecht v. Hertz Corp.*, 2016 WL 6139911, at *3-*4 (D.N.J. Oct. 20, 2016) (finding plaintiff lacked Article III standing to challenge the legality of certain statements made on defendant's website where the plaintiff failed to "allege that he even viewed (let alone relied upon to his detriment) either of these sections of Hertz's website"); *Braitberg v. Charter Commc'ns, Inc.*, 2016 WL 4698283, at *4 (8th Cir. Sept. 8, 2016) (holding that Plaintiff who alleged only that a company violated a procedural duty to destroy personally identifiable information, without alleging any resulting harm – such as disclosure to a third party or misuse of that information – did not have standing under *Spokeo*); *Lee v. Verizon Commc'ns, Inc.*, 2016 WL 4926159, at *2 (5th Cir. Sept. 15, 2016) (holding plaintiff's allegation

of an "invasion of a statutory right to 'proper plan management' under ERISA" did not establish a concrete harm "where there was no allegation of a real risk that Plaintiff's defined-benefit-plan payments would be affected"). [4]

In any event, and despite Plaintiff's counsel's arguments to the contrary, it is undisputed that there was no risk that Plaintiff would pay the $4.95 processing fee because he never had an account with AT&T and immediately believed the Collection Letter to be a "scam." To be sure, in certain circumstances, the risk of real harm may satisfy the requirement of concreteness. *See*

---

[4] Plaintiff further argues he "cited to dozens of holdings where district courts have overwhelmingly found that a plaintiff, whose rights under the FDCPA have been violated, has Article III standing to sue." (ECF No. 54 at 1.) Plaintiff contends, "[a]s in *Blaha* [*v. First National Collection Bureau*, Case No. 16-2791, slip op. (D.N.J. Nov. 10, 2016)], it does not matter that the Plaintiff did not pay the unauthorized $4.95 processing fee unlawfully sought by the Defendant in its Collection Letter." (*Id.* at 3.) Plaintiff's reliance on *Blaha* is misplaced. Initially, unlike *Blaha* (and the overwhelming majority of cases cited by Plaintiff), where the Court was deciding a Fed. R. Civ. P. 12(b) motion to dismiss and required to accept the plaintiff's allegations as true, this case is at the summary judgement stage and no such presumption of truthfulness applies. Moreover, in *Blaha*, the plaintiff alleged the defendants violated Sections 1692e and 1692f of the FDCPA by sending her a letter that sought to collect on a time-barred debt and allegedly seeking to induce consumers to pay the debt in an effort to revive the statute of limitations. *See Blaha*, slip op. at pp. 4, 15. Defendants moved to dismiss arguing, *inter alia*, the statutory violations alleged by the plaintiff were bare procedural violations insufficient to establish Article III standing. *See id.* at 14. Although the *Blaha* Court ultimately found defendant's collection letter did not violate the FDCPA, it held the complaint sufficiently alleged a harm which the statute was intended to guard against, noting that an injury in fact may exist "solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Id.* at 15-16. Here, however, Plaintiff admits he never opened any account with AT&T and the unsupported (indeed, flatly contradicted) allegation that "the AT&T account was related to the Plaintiff's cellular phone, which the Plaintiff used for personal, not business uses" is insufficient at the summary judgment stage. Indeed, even Plaintiff's counsel acknowledged the heightened standard of proof necessary on a motion for summary judgment. (*See* Tr. at 6:23-7:3 ("It impacts the burden of proof at that particular stage so I would like to say a motion to dismiss stage it might just be you have to, you know, put together the allegations but that's about it while at a summary judgment stage you might actually have to prove it.").) But Plaintiff's counsel also admitted that "when we first moved for class certification we had a declaration in there saying that, you know, my account was never used for business purposes[,] it was only used for personal purposes" because "*we were just trying to establish one of the prongs of our prima facie claim.*" (*Id.* at 15:11-16:5 (emphasis added).) While these allegations might be sufficient to overcome a motion to dismiss, at the summary judgment stage, a plaintiff "actually ha[s] to prove" their allegations. But Plaintiff has failed to do so here.

*Spokeo*, 136 S. Ct. at 1550; *see also Carney v. Russell P. Goldman, P.C.*, Case No. 15-260, slip op., 2016 WL 7408849 (D.N.J. Dec. 22, 2016) (denying motion to dismiss FDCPA claims where plaintiff allegedly suffered only an informational injury and a risk of economic injury resulting from defendant's statutory violations). While the Court has doubts the Collection Letter violates the FDCPA,[5] the alleged procedural violations in this case also may entail a degree of risk sufficient to meet the concreteness requirement as to any of the 31,000 recipients of the Collection Letter who actually had an account with AT&T. However, Plaintiff readily admits he suffered no actual harm nor was he exposed to any risk of harm. Instead, Plaintiff complains of the quintessential "bare procedural harm, divorced from any concrete harm," which cannot "satisfy the injury-in-fact requirement of Article III." *See Spokeo,* at 1549-50 (holding that a concrete harm is one that is "not conjectural or hypothetical").

---

[5] Although not cited by the parties in their briefs, the Court is aware of at least one very recent (albeit non-precedential) opinion of the Third Circuit dealing with a near-identical debt collection letter as here. *See Szczurek v. Professional Mgmt., Inc.*, 627 Fed. App'x. 57 (3d Cir. 2015). The collection letter in *Szcczurek*, which the Third Circuit quoted in full in its opinion, stated, in pertinent part, as follows: "Payments can be made by check or credit card. . . . For prompt account resolution, credit and debit card payments can be made by accessing our automated interactive telephone system . . . 24 hours a day, seven days a week. Please be advised that a transaction fee of $5.00 is charged on all credit card payments. This transaction fee is in addition to your actual payment and the fee will not be credited to your account." *Id*. at 59. The Third Circuit took no issue with, nor made any mention of, the letter's reference to a transaction fee and, instead, held that "whether viewed alone or in context," the "correspondence did not violate the FDCPA." *Id*. at 58, 62. The District Court in *Szczurek* also quoted the collection letter in its entirety, again without any apparent pause, and nonetheless granted summary judgment in favor of the defendant because "[t]he notice states clearly . . . that the debtor has multiple options, and the least sophisticated debtor, reading the notice in its entirety, would understand that." *Szczurek v. Professional Mgmt., Inc.*, 59 F. Supp. 3d 721, 728 (E.D. Pa. 2014). While not dispositive, because the issue was not before the Third Circuit and its opinion is non-precedential, this Court nevertheless identifies the obvious reality that a recent, non-precedential Third Circuit opinion analyzing nearly-identical language, in the context of an FDCPA claim, has the potential to be persuasive. In light of the Court's finding that Plaintiff lacks Article III standing, however, the lack of subject matter jurisdiction precludes the Court from addressing the merits of Defendant's alleged FDCPA violations at this time.

13

In sum, Plaintiff admits he never suffered any actual harm as a result of Defendant's alleged FDCPA violations, and the alleged risk of harm to the Plaintiff in this case is entirely conjectural or hypothetical. Because Plaintiff has not suffered an injury-in-fact he lacks Article III standing and this case must be dismissed accordingly for lack of subject matter jurisdiction.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Cross-Motion for Summary Judgment is **GRANTED**. Plaintiff's Motion for Class Certification is, therefore, **DENIED** as moot. An appropriate order will follow.


**Date: January 4, 2017**                               */s/ Brian R. Martinotti*
                                                        **HON. BRIAN R. MARTINOTTI**
                                                        **UNITED STATES DISTRICT JUDGE**